221 A.2d 815.

STATE *vs.* WILLIAM EDWARD BRADSHAW.

JULY 22, 1966.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

234

JOSLIN, J. This cause comes to us on the bill of exceptions of William E. Bradshaw who stood trial and was

convicted before a justice of the superior court sitting with a jury on a charge of unlawfully killing another while attempting to perpetrate a robbery from his person.

Insofar as here material the facts are that at about 9:30 on the evening of May 21, 1963 Matthew Crilley while working in his liquor store in Newport was stabbed during an attempted robbery from his person. Within a short time defendant, a sailor, was taken into custody. Being unable to identify himself either by an ID-card or a liberty pass he was, following established procedures in such cases, turned over by the police to the naval shore patrol for positive identification. On the following morning he was returned to police custody.

Throughout the day of the 22d defendant as well as two other sailors, Willis and Simmons, by that time all suspects in the Crilley stabbing, were interrogated at intervals by the police. In the early stages of the questioning both defendant and Willis said Simmons was the one who entered the liquor store where the stabbing occurred and they signed statements to that effect. The victim, however, when the three suspects were brought to his bedside at the hospital where he had been taken shortly after the incident, identified Willis rather than Simmons as his assailant. Thereafter Willis, while being interrogated by the police in a room from which defendant was excluded, changed his story and told the authorities that although he had not witnessed the stabbing, he had seen defendant enter the liquor store just before it occurred. Faced with the Willis accusation which was made within his hearing range but beyond his vision, defendant incriminated himself. His statement was reduced to writing and signed.

At the trial the written statement, although not introduced as an exhibit, was used as a testimonial aid by the police officer who had done the interrogating. He

testified that defendant said that the victim when asked for money took a wooden bat from below the counter and began hitting him with it. When this happened he tried to escape. He denied that the stabbing was intentional, and he explained the incident by saying that the victim walked into a knife he was holding. The testimony of both Willis and Simmons, although neither was an eye-witness to the fatal assault, implicated defendant as the guilty party.

The victim died on May 27 after surgery. The cause of death was the stabbing wound sustained during the attempted holdup and complicating pneumonia and peritonitis.

The defendant relies principally on his exceptions to the admission of his incriminating statements. Initially he contends that the failure of the authorities to advise him of his rights to counsel and to remain silent at his May 22, 1963 in-custody interrogation made inadmissible at his December 1963 trial testimony of his incriminating responses to the police questioning.

Our decision in State v. Gannites, 101 R. I. 216, 221 A.2d 620, is dispositive of this contention. In that case we refused to give retrospective application to Escobedo v. Illinois, 378 U. S. 478, Miranda v. State of Arizona, 34 U. S. L. Week 4521, and State v. Mendes, 99 R. I. 606, 210 A.2d 50. Since Bradshaw's trial began prior to the decisions in those cases the failure to advise him of his rights without more is of no assistance.

As an alternative ground going to the admissibility of his statements defendant calls our attention to the cir-cumstances surrounding the interrogation process. They include the failure of the investigating authorities to advise him of the Escobedo, Mendes and Miranda rights, the sporadic interrogation to which he was subjected over a prolonged period, the extended duration of his detention,

the questioning of his accuser within his hearing but beyond his vision, and the failure of the record to disclose affirmatively that he was either bailed or brought before a committing judge within twenty-four hours after his arrest as required by G. L. 1956, §12-7-13. These factors taken together, he argues, present a totality of relevant circumstances which although not amounting to a torture of his body, so tortured him in mind that his will was overcome and his confession coerced.

Because for reasons which will hereafter appear the conviction cannot stand and defendant must be retried, a decision on whether the conditions attendant upon defendant's interrogation rendered his incriminating statements involuntary is in our judgment not required. It may well be that upon retrial testimony of those statements either will not be offered or, if offered, will be rejected.[1] Moreover, even if offered and admitted and if the case were then to come here on the issue of voluntariness, we would have an advantage we do not now have of a record which under *Jackson* v. *Denno*, 378 U. S. 368, 378, 379, should explicitly disclose the trial justice's conclusions on the issue of the voluntariness of the statements as well as her findings upon any disputed issues of fact. In the circumstances we deem it inappropriate at this time to rule on whether defendant's oral admissions were coerced.

---

[1]The trial of Bradshaw began before the decisions in *Escobedo, Miranda* and *Mendes*. His retrial, of course, will follow those decisions. Whether in these circumstances a failure to have advised him of his rights will under *Johnson* v. *State of New Jersey*, 384 U. S. 719, require that his incriminating statements be excluded is a question we do not reach. We observe, however, that in *Johnson* at 732 the court said: "Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused."

In additon to his contentions relating to the involuntariness of his statements defendant also presses his exception to the trial justice's denial of his motion for the production of a report used by a witness to refresh his recollection prior to coming to court. The witness was police officer Donnelly and what he said in the trial justice's language was "significant" on the question of identification.

He arrived at the scene of the crime shortly after the stabbing. Finding the victim bleeding and in apparent need of medical attention he drove him to the Newport Hospital in his police cruiser. En route he inquired as to "Who did it?" and Crilley identified the assailant as to height, build and dress and said that he had been stabbed in the course of an attempted robbery. During cross-examination by defense counsel officer Donnelly admitted that about two weeks prior to taking the witness stand he had refreshed his recollection by examining a report previously prepared.

Although the report was "Very possibly" in the courtroom and the prosecution's stated objection to production was tied to an out-of-court refreshment of recollection rather than to an unavailability of the report, defendant's motion to direct its production was denied. The defendant obviously purposed his request for permission to inspect the record from which the witness had refreshed his recollection[2] so that he could test credibility and search out possible discrepancies between the testimony and the writing.

---

[2]Officer Donnelly testified in reference to refreshing his recollection from the report in the following manner:

"Q. And your report, I suppose you have refreshed yourself from your report before you took the stand?

"A. Yes.

"Q. When did you do that?

"A. About a week ago, two weeks ago.

"Q. When the case was first set down?

"A. Yes.

"Q. You have refreshed your recollection from your report, is that correct?

While the courts generally say that a memorandum used by a witness while on the stand for the purpose of refreshing his recollection must on demand of opposing counsel be produced for inspection and for use in cross-examination, the same rule, although the influencing considerations in Professor Wigmore's opinion are no different, does not have the same general acceptance if the witness' recollection has been refreshed prior to rather than contemporaneously with his taking the witness stand. In the instance of the earlier refreshment, at least until recently, there was a substantial body of authority holding that the right to inspect was not an absolute one and that whether production should be ordered was within the discretion of the court to which the request was addressed. *Goldman* v. *United States,* 316 U. S. 129; *Leonard* v. *Taylor,* 315 Mass. 580; 2 Underhill, Criminal Evidence (5th ed.) §499, pp. 1229-30; 82 A.L.R.2d 562.

The other view under which cross-examining counsel has the right to look at memoranda used by a witness either prior to or while testifying is supported in 3 Wigmore, Evidence (3d ed.) §762, p. 111. The text reads that the "risk of imposition and the need of safeguard is just as great," irrespective of whether the memory of the witness is stimulated *before* or *during* trial. The position that the rule should apply to a memorandum consulted before trial

"A. Yes.
"Q. Do you have that report with you?
"A. No.
"Q. Is it in the courtroom?
"A. Very possibly.
    "Mr. McGowan: At this time I'm asking for the report, your Honor.
    "Mr. Brodsky: I object, your Honor please. There has been no indication that this person had to have this report at the present time to utilize for his testimony. This is a report that he made, that he refreshed his recollection. but he has not used it at the present time.
    "The Court: This is a motion?
    "Mr. McGowan: Motion to produce.
    "The Court: Denied. Exception noted."

for refreshment received strong support in 1957 in *Jencks* v. *United States,* 353 U. S. 657, and has since been increasingly followed. 2 Underhill, Criminal Evidence (5th ed.) §501A (1966 Supp., p. 243); 82 A.L.R.2d 566; *State* v. *Hunt,* 25 N. J. 514; *State* v. *Mucci,* 25 N. J. 423.

In *Jencks* the supreme court held that the price the government must be prepared to pay if it refuses to permit a defendant in a federal criminal trial to inspect and use a document from which a government witness, *prior to* testifying, has refreshed his recollection is a dismissal of the charges. In *Jencks,* if it did not overrule, the court at least qualified its earlier decision in *Goldman* v. *United States, supra.* There the holding was that a trial justice who upon request would examine documents used to refresh recollection to determine their relevancy and materiality to the testimony given could in his discretion grant or deny cross-examining counsel the right to examine those documents.

We have referred to the changing trend in the later cases because it strengthens the rule in this state announced almost fifty years ago in *State* v. *Deslovers,* 40 R. I. 89. There we held that it was error to deny a criminal defendant an opportunity to examine an autopsy report from which a physician a short time *prior* to testifying had refreshed his recollection. Relying principally on Wigmore we said at page 105:

> "In the present case the defendant should have been permitted to show to the jury, if he could, that the statements of the witness were inconsistent with the earlier memorandum or record from which he claimed to have refreshed his memory. This he could not do unless he could see the record itself. This question seems to be well settled by authority."

Although the prosecution attempts to distinguish *Deslovers* on the ground that there the refreshing process occurred only a "short time" before the testimony whereas

here the interval was about two weeks, we are unable to draw a meaningful distinction based solely upon the difference in the time interval between the refreshment and the giving of testimony. Whether the witness' recollection was refreshed, not when it took place, is the vital question. Here it was refreshed and the document used was not unavailable. In these circumstances both on the Wigmore theory and the authority of *Deslovers* it was reversible error for the trial justice to have denied the motion to produce the report used by officer Donnelly.

A further claim of error made by defendant is that officer Donnelly should not have been permitted over objection to describe the assailant and the assault. Such testimony, defendant argues relying on *State* v. *Sullivan*, 20 R. I. 114, did not qualify for admission under the dying declaration exception to the hearsay rule because there was no showing that Crilley believed he was in the immediate presence of death, or that his death was impending, or that he was about to die. Even if not admissible as a dying declaration, it was nonetheless proper to allow the testimony because what was said was part of the res gestae. This appears from the record which, as we read it, discloses that the statements were made within a short time after the assault and were the instinctive and spontaneous utterances of a victim who had not recognized his assailant. Moreover, they were so closely connected with the incident and made under such circumstances as clearly to indicate that there was neither any prior reflection as to what was being said nor a deliberate design to concoct a story. In those circumstances, there was no error. *State* v. *Harrington*, 93 R. I. 36; *Kane* v. *Burrillville Racing Ass'n*, 73 R. I. 264; *O'Brien* v. *M & P Theatres Corp.*, 71 R. I. 339; *State* v. *Badnelley*, 32 R. I. 378; *State* v. *Epstein*, 25 R. I. 131; *State* v. *Murphy*, 16 R. I. 528.

The defendant's remaining exceptions are untenable.

They raise two issues. The first relates to his contention that it was error for the trial justice to instruct the jury that their only possible verdicts were first degree murder or not guilty, and to refuse to charge them that they could in addition return a verdict of guilty of a lesser degree of murder. We find nothing in the evidence, or at least in so much of it as defendant has called to our attention, which would have justified or permitted a verdict other than in accordance with the instructions given. The charge as given was proper and it was not error to deny the request. *State* v. *Saccoccio*, 50 R. I. 356, 360.

The other issue is whether the pertinent portion of G. L. 1956, §11-23-2, which mandated a sentence of life imprisonment for defendant upon his conviction of murder in the first degree, was impliedly repealed by the subsequent enactment of §12-19-6, as amended. The latter section in material part requires the administrator of probation and parole to present to the sentencing judge a presentence report for the purpose of assisting him in fixing sentence in any case including homicide where upon conviction a penalty of more than a year may be imposed. The repugnancy and inconsistency which are the requirements for a repeal by implication, defendant finds in the statutory demand for a presentence report in all cases where there has been a conviction for homicide. He argues that to require the production of such a report would constitute "an exercise in futility" unless the judge had discretion to impose a sentence of other than life imprisonment.

We test his contention within the context of the doctrine which requires us to frown upon repeals by implication and to attempt to construe the two statutes which are in apparent conflict so that if at all reasonably possible they both may stand and be operative. *Lederer Realty Corp.* v. *Hopkins*, R. I., 71 A.456; *Bradley* v. *Quinn*, 53 R. I. 349, 350; *Landers* v. *Reynolds*, 92 R. I. 403, 406.

For the very reason that the legislature should not be accused of contemplating "an exercise in futility" the application of the foregoing rule to these enactments makes clear that it intended that the requirements for the submission of a presentence report would be operative only in those instances where a judge had discretion in the punishments he could impose. So construed, there was no requirement in this case for the submission of a presentence report.

The defendant's exception to the denial of his motion to produce is sustained, his remaining exceptions are overruled, and the case is remitted to the superior court for a new trial.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Assistant Attorney General, for State.

*Leo P. McGowan,* Public Defender, for defendant.