STATE

v.

Guiseppe CAPALBO.

No. 79–247–C.A.

Supreme Court of Rhode Island.

Aug. 7, 1981.

Dennis J. Roberts, II, Atty. Gen., Kathryn A. Salmanson, Sp. Asst. Atty. Gen., for plaintiff.

John J. Bevilacqua, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is a criminal indictment charging the defendant, Guiseppe Capalbo (Capalbo), with one count of murder[1] and one count of carrying a pistol without a license.[2] The defendant was tried before a Superior Court jury and was convicted of both charges. He is before us now on an appeal from the judgment of conviction entered against him.[3] We affirm.

Sometime in early 1978, Capalbo purchased a new Dodge Magnum XE from Elmwood Dodge, Inc., located in East Providence. Apparently defendant experienced mechanical difficulties with the vehicle soon after its purchase in that the vehicle's transmission would not go into reverse. Capalbo called Elmwood Dodge quite frequently to complain about the difficulties with the car and returned the vehicle there on numerous occasions to have the problem corrected, without achieving any satisfactory resolution.

Finally, on April 5, 1978, sometime between 4:30 and 5 p. m., Capalbo entered the showroom at Elmwood Dodge and asked the switchboard operator if he could see the owner of the dealership. Upon learning that the owner was not in, Capalbo went to the sales office. There, Capalbo approached Beniamino Sciarcon, the assistant sales manager, and asked for the sales manager. When defendant found that the sales manager was not present either, he proceeded down the corridor to the service area of the building.

At that time, Norman Grenier (Grenier), the service manager at Elmwood Dodge, was standing in front of the open hood of a pickup truck in one of the service bays, discussing with one of the dealer's mechanics and two customers repairs being made to the truck. Capalbo approached Grenier and, without saying anything, fired three shots from a pistol at him. Grenier fell to the floor, and defendant fired three more shots at him. Capalbo then ran out the door of the service area, got into his car, and proceeded in the direction of Providence. Grenier died shortly thereafter as the result of the gunshot wounds.

A short time later, Major John J. Leyden of the Providence police department was leaving police headquarters when he noticed a vehicle being driven in the wrong direction on Fountain Street, a one-way street. Capalbo stopped his car, got out of the car with a gun in his hand, approached Leyden, and said, "I just shot a man in East Providence." With that statement, Capalbo gave the gun to Leyden. Capalbo was arrested, and the instant indictment followed.

At trial, defendant relied on the defense of lack of criminal responsibility due to a

---

1. In violation of G.L.1956 (1969 Reenactment) § 11–23–1, as amended by P.L.1974, ch. 118, § 5.

2. In violation of G.L.1956 (1969 Reenactment) § 11–47–8, as amended by P.L.1975, ch. 278, § 1.

3. The defendant was convicted of first-degree murder and received the mandatory life sentence. For his conviction on the weapon charge, defendant received a five-year suspended sentence, and was placed on probation for a five-year period to run consecutively to his term of imprisonment.

mental illness.[4] In support of this defense, Dr. Vsevolod Sadovnikoff, a psychiatrist, testified on behalf of defendant that on the basis of a conversation with defendant he concluded that at the time of the shooting Capalbo was suffering from paranoid schizophrenia, a mental disorder which, he testified, "impelled him * * * to take revenge for what he considered had been done to him by [the] automobile dealer." The psychiatrist, however, later in his testimony admitted that at the time of the shooting, defendant knew what he was doing and he knew what he was doing to be wrong.

Following the presentation of defendant's case, the state, in rebuttal, introduced the testimony of Dr. Theodore M. Pinkert, a psychiatrist. Doctor Pinkert, who had not examined defendant but was present in the courtroom during Dr. Sadovnikoff's testimony, testified in response to a hypothetical question propounded by the prosecutor that, in his opinion, Dr. Sadovnikoff's observations derived from his examination of defendant did not support a diagnosis that Capalbo was suffering from paranoid schizophrenia. At the conclusion of the trial, the jury determined that defendant was sane and found him guilty of both charges.

I

Before us, defendant's first contention is that the trial justice erred in refusing to instruct the jury that once defendant introduced some evidence of insanity,[5] the state had the burden of proving defendant's sanity beyond a reasonable doubt. The trial justice refused to instruct the jury as requested, but instead he bifurcated his instructions on murder and insanity, stating:

"In the event that you've been unanimously convinced beyond a reasonable doubt that the State has proved that the defendant committed either first degree murder or second degree murder, then and only then is it necessary for you to consider the effect of the defendant's plea of not guilty by reason of insanity, because, obviously, if the State has not proved beyond a reasonable doubt that the defendant committed first or second degree murder, as I have defined those crimes to you, then of course you must

---

4. At the time of defendant's trial, this jurisdiction followed the *M'Naghten* rule as the test for determining the criminal responsibility of a defendant. That rule, which had been followed in this state since *State v. Quigley*, 26 R.I. 263, 58 A. 905 (1904), and was expressly adopted in *State v. Andrews*, 86 R.I. 341, 352, 134 A.2d 425, 431-32 (1957), provides that a defendant will not be held criminally responsible if, at the time he committed the offense charged, he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know that what he was doing was wrong. In *State v. Johnson*, R.I., 399 A.2d 469 (1979), however, we abrogated the *M'Naghten* rule and adopted a formulation of the Model Penal Code test that reads:

"A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, his capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law is so substantially impaired that he cannot justly be held responsible.

"The terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." *Id.*, 399 A.2d at 476.

5. Specifically, defendant requested the trial justice to instruct the jury that

"once a defendant introduces some evidence of insanity the burden of persuasion is on the State to negate that defense beyond a reasonable doubt and if you find that the State failed to negate the defense of insanity beyond a reasonable doubt you must find the Defendant not guilty by reason of insanity.

"[T]he defense of insanity necessarily refutes an element of the crime of murder and unless the State proves each and every element of the crime charged beyond a reasonable doubt you are required to find the Defendant not guilty.

"[M]urder in Rhode Island is defined as the unlawful killing of a human being with malice aforethought and that the defense of insanity necessarily refutes the specific intent which is the element [of] murder known as malice aforethought and unless the State negates the defense of insanity beyond a reasonable doubt you must find that the State failed to prove beyond a reasonable doubt an essential element of the charge of murder and you are required as a matter of law to find the Defendant not guilty by reason of insanity."

find the defendant not guilty. That would foreclose any further determination.

"The plea of not guilty by reason of insanity is what is known in the law as an affirmative defense, which means that the burden is upon the defendant to prove it. To satisfy that burden, he must prove it by a preponderance of the evidence * * *. In order for the defendant to establish the defense of insanity, he must prove by a fair preponderance of the evidence the following, that at the time of the commission of the alleged crime, he was laboring under or suffering from a defect of reason, due to disease of the mind[,] so as not to know the nature and quality of the act he was doing, or if he did know the nature and quality of the act he was committing, that he did not know that what he was doing was wrong."

The trial justice's instructions thus required the state to prove all elements of murder, including criminal intent, but required defendant to prove his insanity by a fair preponderance of the evidence. The trial justice's allocation of the burden of proof to defendant on the issue of insanity was in accord with well-settled law in this jurisdiction. *State v. Page*, 104 R.I. 323, 330, 244 A.2d 258, 262 (1968); *State v. Jefferds*, 91 R.I. 214, 218, 162 A.2d 536, 538–39 (1960); *State v. Harris*, 89 R.I. 202, 207, 152 A.2d 106, 109 (1959); *State v. Quigley*, 26 R.I. 263, 273, 58 A. 905, 910 (1904).

In this appeal, defendant argues that since proof of insanity necessarily refutes one or more elements of the crime of murder as well as the underlying presumption of sanity,[6] the burden should be on the

prosecution to prove defendant's sanity beyond a reasonable doubt once the defense of insanity is raised and supported by the introduction of some evidence of insanity by a defendant.

Recently, in *State v. Arpin*, R.I., 410 A.2d 1340 (1980), we held that the allocation of the burden of proof of insanity to a criminal defendant was not constitutionally prohibited. Also, in *Arpin*, in addressing contentions similar to those raised by defendant in the instant case, we said that "killing was premeditation, the requisite criminal intent for murder in Rhode Island, and killing while legally insane are [not] inconsistent or mutually exclusive." We concluded that

"a careful analysis of the elements of the Rhode Island murder statute and the *M'Naghten* test for legal insanity does not support defendant's argument that legal insanity and the criminal intent for murder cannot coexist at the time of the commission of a homicide." [Citation omitted.] *Id.*, 410 A.2d at 1351.

None of the arguments advanced by defendant in this case have persuaded us to depart from our established rule that places the burden on a criminal defendant to prove his or her insanity by a fair preponderance of the evidence. Accordingly, we find no merit in defendant's alleged error in the trial justice's instructions to the jury on this point.[7]

II

■ We turn now to the second issue raised by defendant that the trial justice erred in admitting the testimony of the state's rebuttal witness, Dr. Pinkert, thereby denying defendant his right to a fair and

---

6. In his brief, defendant argues that evidence of defendant's insanity negates (1) the *mens rea* element of murder, (2) the presumption of sanity underlying criminal prosecutions for murder, and (3) the capacity in law of the accused to commit murder.

7. Our determination of this issue makes it unnecessary for us to address defendant's related argument that the trial justice violated defendant's due-process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by art. I, sec. 10 of the Rhode

Island Constitution by instructing the jury that the burden was on defendant to prove insanity by a preponderance of the evidence. Nevertheless, we note that in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) the United States Supreme court reaffirmed its holding in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) that the shifting of the burden to a defendant to prove insanity is not violative of the provisions of the United States Constitution.

impartial trial. In support of this contention, defendant advances several arguments, none of which we find to be meritorious.

The defendant first argues that Dr. Pinkert's testimony should not have been admitted into evidence because of the state's failure to comply with Rules 12[8] and 16[9] of the Superior Court Rules of Criminal Procedure. The record indicates that defendant moved to exclude the introduction of Dr. Pinkert's testimony on the ground that the state did not furnish him the name, address, and summary of the witness's testimony at least thirty days prior to the commencement of the trial. The trial justice then instructed the prosecutor to prepare and furnish to defendant a summary of the testimony Dr. Pinkert was expected to give at trial. The trial was recessed briefly while the prosecutor prepared an outline of the witness's expected testimony and gave it to defendant prior to the commencement of Dr. Pinkert's rebuttal testimony.

> Rule 12(c)(2) of Super.R.Crim.P. provides: "In the event a notice is not filed and served as required by this subdivision, the court may refuse to permit the party in default to present evidence at the trial with respect to the defense of insanity, or may in its discretion enter such other order as it deems appropriate under the circumstances."

Likewise, Rule 16(i) of Super.R.Crim.P. provides:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

In our view, the trial justice's order requiring the prosecutor to furnish the summary of Dr. Pinkert's testimony was quite appropriate under the circumstances. We find no error in the trial justice's ruling.

The defendant argues next that the trial justice erred in refusing his motion to have a preliminary hearing to determine whether there was a proper foundation for the admission of Dr. Pinkert's testimony. He asserts that because Dr. Pinkert had not examined defendant, his testimony was to be based solely on Dr. Sadovnikoff's report and on Dr. Sadovnikoff's in-court testimony. Thus, the trial justice's denial of his motion for a voir dire, defendant contends, resulted in the admission of expert psychiatric testimony devoid of any proper foundation.

■ We have consistently held that the determination of the admissibility of an expert witness's testimony rests within the sound discretion of the trial justice. *State v. Benton*, R.I., 413 A.2d 104, 113 (1980);

---

**8.** Rule 12(c)(1) of the Super.R.Crim.P., in pertinent part, provides:

"In the event the defendant gives notice that he intends to rely on the defense of insanity, the Attorney General shall, not later than thirty (30) days prior to commencement of trial, file with the court and serve upon the defendant a written notice stating the names and addresses of persons whom the State intends to call as witnesses to establish the defendant's sanity at the time of the alleged offense."

**9.** *Rule 16(a) of the Super.R.Crim.P., in pertinent part, provides that upon written request by the defendant, the state shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody or control of the state:*

"(5) all results or reports in writing, or copies thereof, of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case * * *;

"(6) a written list of the names and addresses of all persons whom the attorney for the State expects to call as witnesses at the trial in support of the State's direct case;

"(7) as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial[.]"

*State v. Porraro*, R.I., 404 A.2d 465, 471 (1979). The trial justice's exercise of his or her discretion will not be disturbed on review unless there is an abuse of that discretion.

In this regard, the record indicates that prior to calling Dr. Pinkert, the prosecutor indicated to the trial justice that the state was calling the witness in rebuttal for the purpose of presenting him with hypothetical questions containing statements made by Dr. Sadovnikoff in his testimony and asking Dr. Pinkert whether or not he agreed with Dr. Sadovnikoff's conclusion that defendant was suffering from paranoid schizophrenia at the time of the shooting.

 It is clear that personal observation or examination of a defendant is not necessary when an expert witness's testimony is based upon hypothetical questions. *See* 2 Wigmore, *Evidence* § 677 at 939–40 (Chadbourn rev.1979). However, the proper way for defendant to have challenged the foundation of Dr. Pinkert's testimony would have been through cross-examination and then allowing the jury to reject, accept, or accord any amount of weight it chose to his testimony. Under the circumstances, we cannot say that the trial justice abused his discretion in denying defendant's motion for a voir dire hearing.

The final argument advanced by defendant is that the hypothetical question propounded by the state to Dr. Pinkert was improper in that it failed to include essential elements on the issue of insanity. The defendant contends that this lack of factual foundation misled the jurors and prejudiced their deliberation on the issue of insanity. Our examination of the record indicates that on rebuttal Dr. Pinkert testified that there are four basic criteria commonly used by psychiatrists to diagnose schizophrenia: (1) disturbances of "affect," (2) defect in association, (3) ambivalence, and (4) autism. Following this testimony, the prosecutor propounded the following hypothetical question to Dr. Pinkert:

"Q Now, doctor, assume the following facts, white male who is born and is, for the most part, [in his] early years, brought up in the country of Italy, leaves there, moves to Switzerland and Germany, lives there successfully, adapts to the life in those countries, working and such, then immigrates [sic] to another country, specifically, United States, which has a different language than the native language of the individual, the individual teaches himself to read and write the [E]nglish language, the individual acquires citizenship, the individual encounters problems within the framework of commercial business; in other words, purchasing an automobile. Within the problems of that purchase, the individual utilizes established means of recourse. The individual in that context contacts the Attorney General's Office, the consumer's protection counsel, seeks the advice and counsel of an attorney. Absent any other testing of that individual, absent any verification of that information, and absent any other data, do you have an opinion___
"* * *

"As to whether or not those facts will support a diagnosis of paranoid schizophrenia."

In response, Dr. Pinkert stated:

"The opinion is that I hear nothing in the hypothetical [question] which indicates that any of those criteria, which I have previously described, are called into question. I hear none of those [criteria] within the hypothetical [question]."

The following question and answer were then allowed by the trial justice over defendant's objection:

"Q Do those facts support a diagnosis of paranoid schizophrenia?
"* * *

"A No, they do not."

 It is well established in this jurisdiction that the admission of a hypothetical question ordinarily rests in the sound discretion of the trial justice, and his or her rulings thereon will not be disturbed by this court on appeal except for an abuse of such

discretion. *Tavernier v. McBurney,* 112 R.I. 159, 161, 308 A.2d 518, 520 (1973); *Araujo v. Technical Casting Co.,* 100 R.I. 90, 94, 211 A.2d 645, 648 (1965); *Collins v. Gabrielle,* 87 R.I. 235, 243, 139 A.2d 874, 879 (1958). In *Tavernier,* we noted:

"It is also a well founded principle that to be considered admissible, a hypothetical question to an expert witness must embrace all the essential elements of the situation as they appeared in evidence. And unless the question, as posed, contains all the pertinent, undisputed facts, its exclusion by the trial justice is not an abuse of discretion." [Citations omitted.] 112 R.I. at 161, 308 A.2d at 520.

■ Viewing the prosecutor's hypothetical question to Dr. Pinkert in this light, we are unable to say that the question did not contain all the essential elements on insanity as they appeared in the evidence before the jury. The defendant in his brief sets forth several items of information and observations made by Dr. Sadovnikoff in his testimony which were omitted in the hypothetical question posed to Dr. Pinkert. However, there is no requirement that a propounder of a hypothetical question include the entire body of testimony put forward by him or his opponent before the question can be admitted.

■ In our view, the hypothetical question, as posed, was sufficiently framed in light of the evidence so as not to mislead the jury. Thus, we find no abuse of discretion on the part of the trial justice in allowing Dr. Pinkert to respond to the hypothetical question.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

BEVILACQUA, C. J., did not participate.