· Argued March 6, modified ·and remanded April 18, 1962

In the Matter of Lauryne ·Chandler, a Child
## CHANDLER *v.* STATE OF OREGON
370 P. 2d 626

*J. Ray Rhoten,* Salem, argued the cause for appellant. On the brief were Rhoten, Rhoten & Speerstra, Salem.

*C. L. Marsters,* Deputy District Attorney, Salem, argued the cause for respondent. With him on the brief were Hattie B. Kremen, District Attorney and Jena V. Schlegel, Deputy District Attorney, Salem.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and O'CONNELL, Justices.

## SLOAN, J.

In June 1960, the juvenile court of Marion county ordered the above named child to be made a ward of the court and placed her in a foster home. Later the child's natural parent, John Chandler, petitioned the court to revoke the order and return the child to him. After hearing, the court refused to allow the petition

and ordered the child retained as a ward of the court and continued to deprive the parent of custody. He appeals from that order.

The child's mother died some years ago. Later the father remarried. Dissension between this child and the stepmother was the basic cause of the problem. The problem was aggravated by similar dissension between the stepmother and older sisters of this girl which helped to ferment the strife and tended to deprive the girl of the company and companionship of her older sisters. The ill health of the stepmother also contributed to the trouble. On the evening of June 1, 1960, the girl ran away from home and was taken into custody by the juvenile authorities. She was then 13 years old.

The next day an older married sister filed a petition in the juvenile court for Marion county alleging that the child was within the jurisdiction of that court. The petition alleged that the child "has parents who fail to provide her with care, guidance and protection necessary for her physical health, mental and emotional well being . . ." On June 6, 1960, the parents, that is both the father and stepmother, were served with summons demanding their presence at a hearing to be held by the court on June 8, 1960, at 1:45 P.M. The hearing was to determine the truth of the allegations of neglect. The father appeared at the hearing with an attorney. A transcript of the brief hearing held on June 8, 1960, is a part of the record. It was "summary" indeed.

■■ The first assignment of error is directed at the conduct of that hearing. It claims that the court failed to conform to the requirements of ORS 419.500 (1). That statute requires that the "facts alleged in the petition . . . must be established by a preponder-

ance of competent evidence." Clearly that was not done in this case. However, the court's order making the child a ward of the court and taking her from the custody of her father was a final appealable order. No appeal was taken from the order and we are now foreclosed from any further consideration of the question. It must be remembered that the word "jurisdiction" as applied to this proceeding is not the kind of jurisdiction that gives the court the power to act at all. In the sense the word is used in ORS 419.476, which specifies the causes which permit the court to make the child a ward of the court, a finding of jurisdiction is a factual determination that the child is dependent or delinquent. It is not the kind of jurisdictional question that can be raised at any stage of the proceedings.

The order entered by the court at that time, placed the child in the custody of the Marion County Child Welfare Department with directions to place her in a foster home subject to the supervision of the Department. That was done.

In February 1961, the father and stepmother filed the petition requesting the return of the child. That petition came on for hearing on April 7, 1961. A considerable volume of testimony was taken at that time and in later recessed hearings. On May 19, 1961, the court entered the order appealed from which denied this petition.

Although this is an appeal as in an equity case, there are four assignments of error made here. We have already disposed of the first one. The second contention is that the court should have returned the child to the parents. The disposition we make of this case makes it unnecessary to decide this question.

The next assignment claims that the court

erred in refusing to permit the child to be called as a witness and to have been examined in open court. The child was questioned privately by the court in the presence of counsel for the father and for the state. A record of the questions and answers is here. It is said that *Kreutzer v. Kreutzer,* 1961, 72 Adv Sh 421, 425, 226 Or 158, 359 P2d 536, is conclusive on the right to examine the child. The Kreutzer case was a contest between divorced parents for the custody of their children. We held that if the children were competent either party could require them to testify and that the trial judge had no discretion to refuse the right. We think that the concept and intent of the juvenile code would be violated if such a rule were to be applied to the proceedings contemplated by the code. The compelling intent of the juvenile code proceeding is to protect the child in any situation in which the court thinks the child may require it. Discretion must be vested in the trial court to make the initial determination if it would be proper to question a child in any given case. We cannot say the discretion was abused in this case.

The last assignment asserts that it was error for the court to refuse to permit petitioner's attorney to examine certain records of the Welfare Department. In this we think there was error. We recognize that ORS 419.567 (2) provides that:

> "Reports and other material relating to the child's history and prognosis are privileged and, except with the consent of the court, shall not be disclosed directly or indirectly to anyone other than the judge of the juvenile court and those acting under his direction."

and that ORS 411.320 similarly provides the records of the Welfare Department are confidential and that "In any judicial proceedings, except proceedings di-

rectly connected with the administration of public assistance laws, their contents are considered privileged communications."

■ In this case the state had intervened in a family to take a child from the custody of its parent. It was placed in the custody of the Welfare Department. The conduct of the case workers who were supervising the child and the relationship of these people to the child and to the parent and stepmother was directly in issue. During the trial, counsel sought to elicit certain information from this file and was unable to satisfactorily obtain it. He then moved to put the entire file in evidence. This was denied. However, the real question presented here is, should counsel have been permitted reasonable access to the file in order to use that part of it that was relevant to the issues being presented to the court? We think the court should have permitted such an examination. No one asked to take the file away from the immediate custody of the court. The court could have required such safeguards as he may have felt necessary in respect to the examination of the file, but complete denial of access to the file was wrong.

■ It would be unthinkable to say that an agency of the state may seize a person's child and then be the sole judge of how much of the evidence in respect to the agency's conduct it will refuse to divulge. It could not be contended that the statutes mentioned were intended to deny to the proper court the right to control these files, evidence, reports and the like that are material to the exercise of the court's jurisdiction and functions. *State ex rel Haugland v. Smythe,* 1946, 25 Wash2d 161, 169 P2d 706, 165 ALR 1295. See an extensive note on Social Investigation Reports, 1958, 58 Col L Rev 702, 725. ORS 419.500 (2) makes it

clear that this material can only be used by the court, if it is not otherwise competent or admissible, when the court is deciding the disposition to be made of the child. When deciding the basic question if the child should be made a ward of the court which was the issue in this case, such material cannot be considered by the court unless it is competent, relevant and admissible. ORS 419.500 (1).

We see little to distinguish this case from *Jencks v. United States,* 1957, 353 US 657, 77 S Ct 1007, 1 L Ed 1103. There a majority of the court decided that counsel for a person charged with crime should have access to FBI records in order to impeach government witnesses. The case is limited to criminal cases. Certainly the case before us is not a criminal case. But the rights being challenged are equally fundamental, and probably more ancient, than the right to liberty itself. We think the procedure urged in the concurring opinion of Justice Burton in the Jencks case is the proper one to be adopted in these proceedings. He held that the trial court should first examine the file and delete any irrelevant material and any material inimical to the security of the government. The latter type of evidence would not, of course, be in question in a juvenile case. Any relevant material should be made available to counsel. In this case, the record does not show whether the court examined the entire file or not. It only appears that some of the material contained in the file may have been relevant and helpful to have had in evidence. An opportunity to put it in evidence should have been allowed.

■ We are handicapped on this question because the file was not sealed and made a part of the record. It should have been. All of the evidence considered by the court on the challenged issues should have been

made a part of the record on appeal, whatever its form may have been. ORS 419.567 (3) (b). There was no waiver of that right in this case. *Schulyer v. Haggart,* 1960, 224 Or 530, 356 P2d 955, and see Standards for Specialized Courts Dealing with Children, Children's Bureau, U. S. Department of Health, Education and Welfare, 1954.

It has been mentioned that the events we are now called upon to judge occurred two years and more ago. The hearing was a year ago. The futility of an attempt on our part to order a present disposition of the case is, therefore, apparent. We have been concerned, if not shocked, by the showing in this record that those people in the Welfare Department who have been responsible for this girl had not made the slightest effort at any time to attempt to reconcile this girl to her family or attempt any adjustment which may be necessary to successfully return this girl to her home. ORS 419.474, which states the purpose of the code, provides that the care and custody of the child is "preferably" to be "in his own home." For all that appears in the record, it is the intent of the Welfare Department to keep this girl away from her home until she reaches maturity. The evidence in respect to the nature of dissensions in the home does not justify that attitude, if we correctly surmise it. It should be the burden of those responsible to make diligent effort to reconcile these differences.

For the reasons expressed, it is our disposition to reverse. However, that would not solve the problem presented by the case. In so far as we are aware, the girl is now in high school in Woodburn. It would not serve the girl's welfare to require that she leave that school so near the end of the school year as she would be required to do if we were to set aside the

order of the court. For that reason we do not do so. We do remand the cause with the direction that at the end of the school year the court should hold additional hearing, consistent with this opinion, to determine the current status of these parties. The court should particularly inquire as to any effort being made to satisfactorily return the girl to her home. If it develops that no attempt has yet been made, the court should, by appropriate order, require it. We further hold that the order by which the court made the child a ward of the court is modified to make the child a temporary ward of the court. Modified and remanded.

McALLISTER, C. J., dissenting in part.

I dissent from that portion of the majority opinion which holds that the trial court did not err in refusing to allow the father to call his child as a witness and to examine her in open court. This flouts our holding in *Kreutzer v. Kreutzer*, 226 Or 158, 359 P2d 536, in which we held that in view of the express provisions of ORS 44.020 and 44.030, the trial court cannot refuse to permit minor children to testify if they are qualified under the statutes. It may be, as stated by the majority, that discretion should be vested in the trial court to determine whether a child should be permitted to testify in a given case, but if so such authority must come by a change in the statute. This court has no authority to amend the statute by judicial fiat.