STATE, Respondent, v. RICHARDS and another, Appellants.

*November 1—November 26, 1963.*

For the appellants there was a brief by *Dominic H. Frinzi* and *Nicholas C. Catania,* attorneys, and *Shellow & Shellow* of counsel, all of Milwaukee, and oral argument by *Mr. James M. Shellow* and *Mr. Frinzi.*

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* first assistant district attorney of Milwaukee county, with whom on the brief were *George Thompson,* attorney general, and *William J. McCauley,* district attorney.

DIETERICH, J. There are two issues raised on the instant appeal: (1) Whether the trial court erred in admitting testimony concerning statements of defendant Richards to one Marshall Wolcoff to the effect that Wolcoff was not required to talk to FBI agents nor to permit them to search his apartment without a search warrant; and (2) whether the trial court committed prejudicial error in denying defendants the production of prior statements allegedly made to police officers by one of the prosecution witnesses.

(1) *Admission of statements pertaining to another's rights under the constitution.* The robbery allegedly committed by Breslan and Richards occurred on September 16, 1960, in Milwaukee, Wisconsin. The testimony reveals that on September 23, 1960, at approximately 12:15 a. m., several FBI agents entered the apartment of Marshall Wolcoff in Chicago, Illinois, and that defendant Glenn Richards was in the apartment at that time. Robert L. Malone, one of the FBI agents, stated in his testimony that Richards told Wolcoff that he did not have to talk to the agents; that unless they had a warrant they had no right to be there; and that Wolcoff should not allow his apartment to be searched. This testimony was objected to by counsel for defendants on the grounds that Richards' statements were too remote to be a part of the *res gestae,* and that they were not inculpatory or in the nature of a confession, nor were they such as to constitute an admission against interest. The district attorney's contention in support of the admissibility of the testimony was that the statements were inculpatory, in that the jewelry was subsequently discovered in Wolcoff's apartment, and were therefore admissible. The trial court overruled defendants' objections to the testimony for the reasons advanced by the district attorney, remarking that it was "none of this defendant's business, legally," to make such remarks to Wolcoff. Evidence was introduced showing that the jewelry was

found in Wolcoff's apartment later in the same day. The FBI agent also testified that Richards' statement was not the result of any force or duress; that no promises or threats were made in order to get any answers from him; and that in fact no questions were asked of Richards at all.

Appellants Breslan and Richards, on the appeal before this court, contend that as a matter of policy a jury must not be permitted to draw any conclusions as to guilt from these statements made by the accused pertaining to rights granted under the constitution. The state, in response to this contention, addresses its argument to the point that Richards' statement to Wolcoff was a voluntary, spontaneous utterance which was clearly probative of guilty knowledge in view of the fact that the stolen jewelry was later found in Wolcoff's apartment.

The propositions put forth by the state are not questioned by the appellants. Instead the appellants argue that a statement of rights granted under the constitution cannot be used as proof of guilt, citing this court's adoption of the general rule that refusal of an accused to testify under his privilege against self-incrimination, creates no presumption against him. *Montello v. State* (1922), 179 Wis. 170, 172, 190 N. W. 905; *Johns v. State* (1961), 14 Wis. (2d) 119, 125, 109 N. W. (2d) 490. See also sec. 325.13 (2), Stats.

In *Grunewald v. United States* (1957), 353 U. S. 391, 424, 77 Sup. Ct. 963, 1 L. Ed. (2d) 931, the United States supreme court held it to be prejudicial error for the trial court to permit cross-examination of a defendant which related to his plea of the Fifth amendment privilege before a grand jury. The court reiterated its view that no implication of guilt could be drawn from the invocation of the Fifth amendment privilege, and stated that:

". . . the danger that the jury made impermissible use of the testimony by implicitly equating the plea of the Fifth

amendment with guilt is, in light of contemporary history, far from negligible."

Mr. Justice BLACK, in a concurring opinion in which Mr. Chief Justice WARREN and Messrs. Justices DOUGLAS and BRENNAN joined, elaborated upon the reasons underlying the decision in *Grunewald* and similar cases:

"I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the constitution." (p. 425.)

Richards was lawfully on the premises when he made the statement to Wolcoff, and his advice was only that Wolcoff exercise rights granted to him under the constitution. Wolcoff had no duty to allow the FBI agents to search his premises without a warrant, nor even any duty to speak to the officers or to protest his innocence. See *United States v. Di Re* (1948), 332 U. S. 581, 594, 68 Sup. Ct. 222, 92 L. Ed. 210. However the self-incrimination cases cited by the appellants are easily distinguishable from the instant action in that those cases dealt with persons who are invoking constitutional rights personal to themselves. In the instant action the appellant Richards was not declaring rights personal to him under the constitution. Richards was instead advising Wolcoff of Wolcoff's rights to remain silent and to prohibit federal agents from searching his apartment without a warrant. The reasoning of the Fifth amendment cases clearly does not apply to the instant action, and therefore the trial court did not err in allowing the testimony of the FBI agent to stand.

(2) *Denial of access to the prior statements of a prosecution witness.*  One of the chief prosecution witnesses was Mrs. Helen Taylor, who was employed as a waitress in the Walgreen drugstore located on the ground floor of the Empire Building in Milwaukee—the same building in which the offices of the Tanezer Jewelry Company are located.  Mrs. Taylor testified that on September 16, 1960, the date of the robbery, defendants Michael Breslan and Glenn Richards came into the drugstore at approximately 3:50 p. m., and ordered a glass of water.  According to Mrs. Taylor, Breslan and Richards looked at the clock several times and then went out the rear exit of the drugstore at approximately 4 p. m.  She stated that she saw the men go up a flight of stairs leading to the Tanezer Jewelry Company and several other offices.  Approximately twenty to twenty-five minutes later (she was not positive of the length of time they were gone) she saw Breslan and Richards come down the stairs "in a hurry" and leave the building through the front exit of the drugstore.  She testified that both men were carrying briefcases when they came down the stairs and left the building.

The following colloquy then took place during cross-examination of Mrs. Taylor by counsel for the defense:

Mr. Brodkin (defense counsel): "Q. Now, Mrs. Taylor, who did you talk to prior to coming to court this morning?"

Mr. O'Connell (district attorney): "That's objected to as being immaterial."

The Court: "Sustained."

Mr. Brodkin: "Q. Did you ever talk to Mr. O'Connell prior to coming to court?"

Mr. O'Connell: "Objected to as being immaterial."

The Court: "Sustained."

Mr. Brodkin: "Q. Did you give the police a report in connection with this case or a statement at any time and sign it?"

Mr. O'Connell: "Same objection."

The Court: "Sustained."

At this point the jury was excused and defense counsel informed the court that they had reason to believe Mrs. Taylor made prior statements to the police covering matters not included in her testimony at the trial, and contended that they were entitled to have these statements for the purpose of impeaching the witness. The defense argued that they had a right to look at any prior statement in order to determine whether or not the witness' testimony at the trial was inconsistent with it. After hearing arguments of counsel on this point, the trial court sustained the district attorney's objection to the question. The following then occurred:

Mr. Frinzi (defense counsel) : "Will the court permit us to ask this witness whether or not in the month of September she gave a statement to the police and go into what, if anything—the different things she may or may not have said to the police. And after we have determined whether or not she has given a statement and what that statement was—then, have that statement to see whether it is consistent with what she now testifies to?"

The Court: "I will not rule in advance on any question that may be asked in the future. And if you apprehend my ruling to the last objection you will appreciate what my trend of thought is on that subject. I concluded that issue so far as the specific question is concerned. If you have any other aspects of the subject you can ask the questions and I will rule on them. But you can also divine from my ruling as to what the situation will be.

"I do not consider the question posed by you as proper. I have so ruled and will rule in the presence of the jury. But I am not precluding you from any other avenue of approach."

Appellants argue that they have a right to examine prior statements of their accusers which are in the prosecution's possession. They cite *Alto v. State* (1934), 215 Wis. 141, 146, 253 N. W. 777, as aligning Wisconsin with those jurisdictions which give a defendant the right to the production of prior statements of a prosecution witness which relate to the subject matter of his direct testimony. In the *Alto Case*

it was contended that the prosecution was guilty of suppressing evidence. A witness who had testified as to the defendant's guilt admitted on cross-examination that he had previously made a statement to the district attorney which would exonerate the defendant. Counsel for defendant then demanded that the district attorney produce the paper, which he refused to do, and the trial court sustained his refusal. On the appeal this court held that the trial court erred in sustaining the district attorney's actions, but that the error was not prejudicial since the witness had himself admitted on the stand that he made the statements and therefore the paper in the district attorney's possession would add nothing to the evidence. The *Alto Case* does not reveal the type of questions asked the witness concerning his prior statement. In any event, *Alto v. State* may be distinguished in that there the witness admitted on cross-examination that he had made a prior contradictory statement, whereas in the instant action the appellants were not permitted to ask the question of whether any prior statement had been made.

Appellants also cite *State ex rel. Byrne v. Circuit Court* (1962), 16 Wis. (2d) 197, 198, 114 N. W. (2d) 114, as supporting their position. In that case an order was entered directing that a writ of prohibition issue commanding the trial court to refrain from issuing an order compelling the state of Wisconsin to turn over to the defendant before trial statements now in possession of the state of Wisconsin. This court stated in its *per curiam* opinion that occasions may arise after commencement of the trial that will call for the production of a statement of a prosecution witness made prior to trial for impeachment purposes, and that such a situation can be dealt with by the trial judge. One of the justices in his dissenting opinion stated that he could not perceive any valid basis for the majority's ruling that an accused might be entitled to inspect a statement in the state's possession at the time of trial, but not before trial.

The state claims that defense counsel failed to lay a proper foundation for impeachment of the state's witness, in that they never asked Mrs. Taylor whether she had made any statements inconsistent with or contradictory to her testimony on the trial, and that the question asked on cross-examination had no bearing on inconsistency or contradiction. In the words of the district attorney: "The simple fact is that appellants did not pursue the proper course to arrive at the result desired." According to the theory advanced by the state, it would be impossible for an accused to procure and examine prior statements made by a witness for the prosecution unless he knew for a fact that such statements not only existed, but were in fact contradictory.

In the instant action, however, it was impossible for the defendants to establish that the witness' prior statements were inconsistent with her testimony on the trial when the prior statements were withheld from them. All the defendants had to go on was a belief that the witness had made prior statements to the police, and the purpose of their inquiry was to obtain and examine such statements in order to determine whether or not they contained matters not brought out at the trial. When defendants sought to learn whether the witness had made any statements prior to trial, the trial court blocked this line of inquiry, first by sustaining the district attorney's objection to the question, and secondly by stating, in response to an offer of proof by the defendants, that the court had "concluded that issue." The trial judge also stated that if counsel had any more questions they would be ruled upon, although counsel could "divine" from the previous ruling just "what the situation will be" if he chose to so proceed. To deny the defendants access to the statements for the reasons advanced by the state would impose an unreasonable, if not impossible, burden upon them. Since defendants sought to examine the statement in order to ascertain its relation to the witness' testimony, it begs the

question to require that they know enough about the statement to base their questions upon its specific contents before they may examine it. It is obvious, upon the record herein, that the trial court effectively closed the door to any and all further inquiry along these lines.

The question of a defendant's right to examine pretrial statements made by a prosecution witness was decided by the United States supreme court in *Jencks v. United States* (1957), 353 U. S. 657, 667, 668, 77 Sup. Ct. 1007, 1 L. Ed. (2d) 1103, wherein it was stated that:

"Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.

"Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense. The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict, . . . the accused is helpless to know or discover conflict without inspecting the reports. A requirement of a showing of conflict would be clearly incompatible with our standards for the administration of criminal justice in the federal courts and must therefore be rejected. For the interest of the United States in a criminal prosecution '. . . is not that it shall win a case, but that justice shall be done. . . .' *Berger v. United States,* 295 U. S. 78. 88."

The effect of *Jencks v. United States, supra,* was softened by subsequent enactment of the so-called "Jencks Act," 18 U. S. C., sec. 500, which limits a defendant's right of inspection to written statements made and signed by the

witness, or stenographic, mechanical, or other transcriptions thereof which are substantially verbatim recitals of oral statements made by the witness to an agent of the government. The statute makes it clear that the right of inspection does not arise until the witness has testified on direct examination. There is also considerable doubt as to whether *Jencks v. United States* would be binding on the states under due process. The attorney general of Wisconsin has said that it is not binding in this state. 46 Op. Atty. Gen. (1957), 309, 311, 312.

The appellants' contentions, however, are not that *Jencks v. United States* is binding on this court, but only that the reasoning and policy underlying the *Jencks* decision should be applied in the instant action. Recent decisions in other states have shown a marked trend toward adoption of the *Jencks* rationale. See, for example, *State v. Saenz* (1960), 88 Ariz. 154, 157, 353 Pac. (2d) 1026, 1029; *State v. Hutchins* (1957), 51 Del. 100, 106, 138 Atl. (2d) 342, 346; *People v. Wolff* (1960), 19 Ill. (2d) 318, 324, 167 N. E. (2d) 197, 201; *Walker v. State* (1962), 78 Nev. 463, 477, 376 Pac. (2d) 137, 144; *State v. Murphy* (1961), 36 N. J. 172, 187, 175 Atl. (2d) 622, 630; *State v. Morgan* (1960), 67 N. M. 287, 293, 354 Pac. (2d) 1002, 1005, 1006; *People v. Rosario* (1961), 9 N. Y. (2d) 286, 289, 290, 173 N. E. (2d) 881, 883, 884; *Chandler v. State* (1962), 230 Or. 452, 458, 370 Pac. (2d) 626, 629; *Commonwealth v. Smith* (1963), 412 Pa. 1, 4, 192 Atl. (2d) 671, 672.

The California supreme court gave the following reasons for its adoption of the *Jencks* rule in *People v. Chapman* (1959), 52 Cal. (2d) 95, 98, 338 Pac. (2d) 428, 430:

"The value of obtaining such statements, particularly where they were made before time dulled the memory of the witness, is obvious. The statements may contain contradictions of the testimony of the witness, may omit some facts related by the witness at the trial, or may reveal a contrast

in the emphasis placed on the same facts. . . . As pointed out in the Jencks case, a requirement of proof of a conflict between the witness' testimony and his earlier statement would, in many cases, deny the accused the benefit of relevant and material evidence. Ordinarily a defendant cannot show that a statement contains contradictory matters until he has seen it, and, if such a showing were a condition precedent to production, his rights would be dependent upon the highly fortuitous circumstance of his detailed knowledge as to the contents of the statement."

We conclude that a defendant in a criminal case is entitled to inspect statements previously made to the authorities by witnesses called to testify on behalf of the state. This right goes only to statements or portions thereof concerning the subject matter of the witness' testimony and written or signed by the witness or given orally and stenographically or mechanically transcribed. As indicated in *State ex rel. Byrne v. Circuit Court, supra,* we see no policy reason to require that inspection be afforded to the defendant before the witness testifies. But after direct examination of the witness, upon request of the defendant out of the presence of the jury, the court should order the state to produce for inspection all such statements of the witness in any of the forms referred to.

Situations may arise, such as those referred to in sub. (c) of the Jencks Act, 18 U. S. C., sec. 3500, where portions of the statement may be so totally irrelevant to the subject matter of the testimony of the witness that such portions should be withheld from the defendant. In such cases the state may request the judge to make an *ex parte in camera* inspection of the statement and adopt reasonable means to withhold those portions from the defendant before permitting inspection.

Counsel for the defense may point out to the court, out of the presence of the jury, what parts of the statements they desire to use. Use upon the trial may be permitted by the court if it determines that there are such inconsistencies be-

tween the testimony and the statements, or such variance between them (including omissions) as would tend to substantially impeach the witness' testimony. A stenographic record shall be made of these proceedings.

Although as we now hold, appellants here were entitled to inspection of such statements of Mrs. Taylor, if any were made by her, the failure of the court to order inspection was not prejudicial unless there were such statements and they contained such inconsistencies with, or variations from, Mrs. Taylor's testimony as would have been useful to counsel in impeaching her testimony. We therefore reverse the judgment but do not order the verdict set aside. Upon remand, the circuit court should cause production of Mrs. Taylor's statements, if any, and determine at a hearing whether such inconsistencies or variations exist. If they do, a new trial should be ordered so that relevant portions of the statements may be available to defense counsel upon the trial. If, on the other hand, the trial court concludes upon the new inquiry to reaffirm its former rulings, a new judgment should be entered upon the jury verdict of guilty.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.