First case—Argued December 19, 1972, reversed with instructions
April 9, petition for rehearing denied May 10, petition
for review denied June 19, 1973

Second case—Submitted on briefs January 30,
dismissed April 9, 1973

In the Matter of Teresa Marie Thompson, a Child.

STATE ex rel JUVENILE DEPARTMENT OF
MARION COUNTY and THOMPSON, *Respondents,*
*v.* MARSHALL, *Appellant.*

508 P2d 482

*Catherine Zorn,* Salem, argued the cause and filed the briefs for appellant.

No appearance for respondent State ex rel Juvenile Department of Marion County.

*Hattie Bratzel Kremen,* Salem, argued the cause and filed the brief for respondent Emmett Thompson.

Catherine Zorn, Salem, for appellant.

No appearance for respondent State ex rel Juvenile Department of Marion County.

Hattie Bratzel Kremen, Salem, for respondent Emmett Thompson.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

These appeals from the juvenile court are concerned with the custody and welfare of a little girl, the rights of her mother and those, if any, of the child's maternal uncle and aunt.

The child Teresa is the youngest child born of the marriage of Shirley Thompson Marshall and Roy Lester Thompson. Her parents were divorced in Oklahoma in 1968 and the mother was awarded her custody and that of her three older brothers. Following the divorce the mother encountered prolonged periods of economic vicissitudes accompanied by emotional instability. As a result, in 1970 she first asked the father to take and support the three boys. He did so and has had the boys since that time. The boys are not involved in this proceeding and do not live in Oregon.

Subsequently, in September 1970, the mother came to her brother, Emmett Thompson, and his wife, Lillian, in Oregon, and asked them if they would permit her to leave Teresa with them while she sought a satisfactory solution to her economic and emotional problems. The child was then about six years old. They agreed. The mother executed a consent enabling them

to serve as guardians of the child, and thus to place her in the public schools. She has resided with them since that date.

In July 1971, following termination of the school year, the mother, then living in California, believing that her circumstances had improved to the point she could properly care for the child, sought her return. Her brother and his wife refused. Instead, they sought, on July 27, 1971, by petition to have her made a ward of the juvenile court on the ground the mother was "still experiencing extreme instability and mental and emotional problems such as would interfere with the proper care and protection of said child." ORS 419.476 (1)(c). A temporary custody order in the latter proceeding was issued the same day by a judge sitting pro tem in the juvenile court, committing the child to the custody of Emmett Thompson.

This order was, so far as the record discloses, issued ex parte and without notice to the mother.

On July 30, 1971, Emmett Thompson and his wife filed a petition to adopt Teresa. The mother also appeared therein and vigorously resisted this further proceeding.

The trial court consolidated the juvenile court proceeding and the adoption proceedings on August 20, 1971, following the assignment of the adoption matter① to the juvenile court, and on that date the court entered an order that "the hearing in this matter be continued to September 1, 1971," and "that the said child

---

① On March 14, 1972, the circuit court denied nunc pro tunc as of December 3, 1971, Mr. Thompson's adoption petition because it found appellant "at no time wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, within the provisions of ORS 109.324." No appeal was taken therefrom.

continue in the temporary custody of * * * Mr. and Mrs. Emmett Thompson."

Following a hearing held September 1, 1971, the court concluded the "child is within the jurisdiction of the Court, as alleged in the petition," continued the hearing for study 90 days, and, as stated above, awarded temporary custody to the petitioners. The study was to ascertain the circumstances under which the mother was living with her husband, Lee Marshall, in California.

The report from the California Welfare Department dated November 16, 1971, was received in due course. It was positive and recommended the mother, the stepfather, their home and living conditions as fully qualified to have the custody of Teresa. (See Appendix.)

The Marion County Child Welfare Department, however, filed a report on December 3, 1971, recommending to the contrary, primarily in the belief the child was well stabilized and secure with her uncle and aunt. This report suggested that the matter again be reviewed in June 1972. The court on December 29 entered an order making the child a ward, continuing the matter to July 12, 1972, and leaving the child in the temporary custody of Emmett Thompson subject to visitations by the mother as arranged through Children's Services Division.

On January 27, 1972, the mother appealed the trial court's order. Thereafter while the appeal was pending she again sought a further review in July 1972, as provided in the order appealed from. A hearing was held July 31, 1972. The court continued the matter to October 16, 1972, left the child with peti-

tioners and ordered a further evaluation of the mother's home in California.

Following a hearing on October 16, 1972, the court on October 27, 1972, concluded because the order of December 29, 1971, had been appealed that the circuit court lacked jurisdiction over the cause until after it had been finally disposed of on appeal. The mother then filed an appeal from this latter order.

The two appeals are disposed of by this opinion.

■ The policy of the law is that a child preferably should live with its parents. *Chandler v. State,* 230 Or 452, 370 P2d 626 (1962) ; ORS 419.474 (2).

■ Here, as demonstrated by the court's findings in the adoption proceeding, (see n 1, supra), we are not dealing with a case involving either abandonment or neglect, but rather with a parent who in a sincere effort to provide the best possible care for her daughter voluntarily placed the girl with a responsible relative for a school year. During this period the child made a good adjustment, thus demonstrating not only good care by the petitioners but also wise and responsible judgment upon the part of the mother.

The fact that a child develops satisfactorily under such circumstances does not itself support a conclusion that it should not be returned to its natural parent or parents at such time as there is reasonable ground to believe that the natural parent is ready, willing and able to resume the care, custody and control of the child. Indeed it does not, standing alone, warrant wardship at all.

■ We think that the report of the Modesto County Welfare Department (see Appendix) clearly established that the conditions in the mother's life and home were such that she was indeed both ready and

able to have Teresa returned to her forthwith. That she was willing is not challenged.

The trial judge, however, as stated above, concluded because the child was stabilized in school and in the petitioners' home that the matter should be continued for further hearing to the end of the 1972 school year, the child remaining with the petitioners. The mother appealed. She also sought the return of the child when the school year ended. Finally, the court concluded in October 1972, under ORS 419.561, that it lacked jurisdiction while the case was on appeal to enter any order transferring the child.[2] Thus the child, temporarily placed with a relative for one school year, now finds herself, as a third school year draws rapidly to a close, still there.

We conclude that the mother is entitled now to the custody of Teresa. It is for her to determine in the light of the best interests of the child whether Teresa should remain with the petitioners to the end of the current school term.

■ In the view we have taken of this case we do not find it necessary to decide the second appeal. Our decision on the first appeal renders the second moot.

The judgment making Teresa a ward of the juvenile court and entrusting her custody to the petitioners is reversed with instructions to dismiss the petition.

---

[2] ORS 419.561 (5) provides:

"Unless otherwise ordered by the appellate court, the filing or pendency of an appeal does not suspend the order of the juvenile court nor shall it discharge the child from the custody of the person, institution or agency in whose custody the child may have been placed."

No application was made to this court under that section.

246

## WELFARE DEPARTMENT
D. C. QUISENBERRY
DIRECTOR

P. O. BOX 1727                    MODESTO, CALIFORNIA 95354

PLEASE DIRECT REPLY TO

Howard Swensen - #557

November 16, 1971

RE: Teresa Thompson
Age 7

Mr. David F. Thomas
Marion County Children's Services Division
480 Church Street, S.E.
Salem, Oregon 97310

Dear Mr. Thomas:

Thank you for your letter of October 11, 1971, requesting a home evaluation for Mr. and Mrs. Lee Marshall. I apologize for not answering sooner, but I have been waiting for the Marshalls to return from a vacation. They apparently went to Oklahoma for the purpose of disposing of some real estate property owned by Mrs. Marshall.

Mr. and Mrs. Marshall live in a comfortable two-bedroom rental located in central Modesto. They pay $130.00 per month rent. Mr. Marshall was employed at the Bill Hughes Dodge Company until about three weeks ago. According to Mr. Marshall, he was laid off because he refused to falsify warranty records.

Mr. Marshall appears to be a fine person. He is a college graduate with a degree in business administration and a minor in psychology. Apparently his work history has been good. Mr. Marshall was divorced for ten years before his marriage to Shirley Marshall. He has four children, ages 16 through 25, by his former wife. Mr. and Mrs. Marshall appear happily married. Mrs. Marshall is upset because of the situation with her daughter Teresa. Both Mr. and Mrs. Marshall have expressed a desire to have Teresa in their home. The home is adequate for the child's needs. Mr. Marshall has a good job prospect and will know soon if accepted. If he gets the position (service manager for a Dodge agency—$1,400.00 per month), he will move from the Modesto area.

Page 2

Mr. David F. Thomas
November 16, 1971

The Marshalls have approximately $3,000.00 in their possession. This amount is sufficient to meet their needs until employment can be found. I contacted their landlord on two occasions and was told that Mr. Marshall is a reliable person.

I do feel that Shirley Marshall is a good mother. I think that she is quite capable of meeting the needs of her child. Mr. Marshall is a stabilizing influence in the home.

Would it be advisable for me to recommend to the Marshalls that they be at the hearing in December?

I will continue to have contact with the Marshalls and will notify you of any change.

I hope this information is of benefit to you. If you have further questions, please feel free to write or telephone me at (209) 526-6689.

Very truly yours,

STANISLAUS COUNTY WELFARE DEPARTMENT

Howard Swenson

Howard Swenson
Social Service Worker III
Children's Services Division

HS/lj