Argued and submitted May 4, affirmed June 22, petition for review denied October 6, 2016 (360 Or 422)

In the Matter of I. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent.*

*v.*

T. E. B.,
*Appellant.*

Marion County Circuit Court
15JU05434; A160951

377 P3d 682

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**FLYNN, J.**

In this juvenile dependency case, the court took jurisdiction over child after father admitted facts that formed one of the alleged bases for jurisdiction. Father appeals, contending that his statements and *pro se* filings throughout the proceedings demonstrate that father admitted only the fact that he was incarcerated and did not "knowingly or voluntarily" admit to facts sufficient to establish jurisdiction. Father assigns error to the court's assertion of jurisdiction and to the court's subsequent refusal to allow father to withdraw his admission. Alternatively, father argues that the jurisdictional judgment must be reversed because father received inadequate representation by trial counsel, rendering the jurisdictional proceeding fundamentally unfair. We conclude that the juvenile court did not err and we affirm without prejudice to father's right to bring his inadequate assistance of counsel claim under the proceeding set out in ORS 419B.923.

Only the procedural facts are material to this appeal. The Department of Human Services (DHS) removed child from his mother's care and petitioned the court to assert jurisdiction over child under ORS 419B.100(1)(c), because various conditions and circumstances involving mother and father were "such as to endanger the welfare of the child." As to father, the petition alleged:

"E.   The conditions and circumstances of the child are such as to endanger the welfare of the child by reason of the following facts: The child's father is incarcerated and unavailable to be a custodial resource at this time;

"F.   The conditions and circumstances of the child are such as to endanger the welfare of the child by reason of the following facts: The child's father has a pattern of criminal behavior and incarceration that disrupts and compromises his ability and availability to adequately and appropriately parent."

At a hearing regarding the allegations against father, father's counsel advised that father was "prepared to admit to E, that he is incarcerated and unavailable to be a custodial resource at this time" and that "[t]he State is willing to

dismiss to F, that reading that he has a pattern of criminal behavior and incarceration."

Father had previously filed a *pro se* petition in which he requested a variety of relief, including a "change of custody," from child's current placement with an aunt and uncle to "temporary custody" of child with father's mother (grandmother) or father's fiancée, who lived with grandmother. This petition also objected to DHS taking custody on the assumption that father "has a criminal past which shows he has a tendency to commit crimes" and requested that the court arrange transportation for child to visit father while father remained incarcerated.

After father's counsel reported that father was prepared to "admit to E," the court asked if father was planning to withdraw his *pro se* petition. Father answered that he did not want to withdraw the petition, and father's counsel, who first saw the petition at the time of the hearing, indicated that the court could proceed with father's admission and then address the petition later.[1] Father's counsel also suggested that father's petition primarily reflected his concern that a criminal history did not prevent him from being an adequate parent.

The court explained to father that he had the right to a trial, at which DHS would have the burden to put on evidence to prove the allegations in the petition and at which father would have the chance to present his own evidence to challenge the DHS evidence. The court further explained that father could waive the trial right and admit to part of the petition if that was his preference. The court then asked:

> "[P]aragraph 2E of the petition says, 'The conditions and circumstances of the child are such as to endanger the welfare of the child by reason of the following facts: The child's father is incarcerated and unavailable to be a custodial resource at this time.' Is that true?"

Father responded, "That's true, ma'am." The court found this to be "a knowing and voluntary admission."

---

[1] At the time of the hearing regarding father's admission, the allegations against mother were still pending. The court later accepted mother's admission to an allegation regarding her parenting skills and then issued the judgment asserting jurisdiction that is the subject of this appeal.

The court and counsel then engaged in a discussion about remaining issues, including resolution of the allegations against mother, after which father asked to add something "for the record." He then emphasized "I do have my mother, [child's] grandmother, and my fiancée that are willing to take care of [child] if that's what it comes down to. I'm not completely—you know, incapable of taking care of [child], because I do have my mother and my fiancée willing to help me out with [child]."

Father later filed additional *pro se* motions, including a motion to change counsel, and moved to withdraw his admission. The court granted father's request for new counsel but denied his motion to withdraw his admission. Before denying father's motion, the court reviewed "the audiovisual recording of father's admission" and found "that he expressed a full understanding of what he was admitting, was clear about what he understood that he was (and was not) admitting, and was not coerced or misled about the nature and consequences of his admission."

We first consider, and reject, father's contention that his admission was insufficient to establish jurisdiction. In reviewing the juvenile court's assertion of jurisdiction over a child, unless we exercise our discretion to review *de novo*, this court views the record "as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Here, the court took jurisdiction based on father's admission that it was "true" that "[t]he conditions and circumstances of the child are such as to endanger the welfare of the child by reason of the [fact that] father is incarcerated and unavailable to be a custodial resource at this time." Father recognizes that "a party may stipulate to facts supporting jurisdiction." *Dept. of Human Services v. D. D.*, 238 Or App 134, 138, 241 P3d 1177 (2010), *rev den*, 349 Or 602 (2011). He contends, however, that his admission that "he was incarcerated and not available to personally provide day to day care" for child is insufficient to establish

jurisdiction, given father's proposal to place child in the temporary custody of grandmother. He relies on our decisions in cases such as *Dept. of Human Services v. A. L.*, 268 Or App 391, 400, 342 P3d 174 (2015), in which we held that, in light of the parents' entrustment of the children to the paternal grandparents, DHS failed to show any connection between the parents' conduct and a risk of harm to the children.

The principle discussed in our cases like *A. L.*, however, does not require reversal in this case, because father also admitted that his circumstances present a danger to the welfare of his child. In other words, father admitted that his unavailability to parent child presents a danger to child's welfare despite his proposal to entrust child to the care of grandmother. Moreover, father's waiver of the right to require DHS to present evidence and of the right to present his own evidence means that the record contains no evidence contrary to father's factual admission that his incarceration presents a danger to child. The juvenile court properly determined that the admitted circumstances present a risk of harm to child that is sufficient for jurisdiction.[2]

We next consider, and reject, father's contention that the juvenile court erred when it refused to allow father to withdraw his admission. Father argues that the court had discretion to allow father to withdraw his admission and that the court abused its discretion because the "record reflects that father misunderstood the details of his admission and the ultimate legal consequences of making such an admission," and, thus, that father's admission was not "knowing and voluntary." *See Dept. of Human Services v. A. D. G.*, 260 Or App 525, 534, 317 P3d 950 (2014) (the juvenile court abuses its discretion if its decision is not within a range of legally correct choices). Father recognizes that "there is no specific provision in the juvenile dependency code that gives the juvenile court authority to allow a party to withdraw his or her admission" but relies on the general "proposition that the trial court may relieve a party from the

---

[2] Father emphasizes that we have held that "jurisdiction cannot itself be created by stipulation," *D. D.*, 238 Or App at 138, and DHS urges us to reconsider and disavow that rule. We do not address that dispute because we conclude that father's factual admission establishes jurisdiction.

consequences of a judicial admission." *Yates v. Large*, 284 Or 217, 223, 585 P2d 697 (1978). We assume for purposes of this opinion that the juvenile court has the discretion to allow a parent to withdraw an admission, but we reject father's premise that the court erred in finding that father's admission was "knowing and voluntary."

The court's finding that father made a knowing and voluntary admission is supported by the evidence. Before accepting father's admission, the trial court advised and questioned father extensively. The court confirmed that father had had the opportunity to look at the petition. The court explained that the state was "asking this Court to take jurisdiction based on the allegations in the petition" and that this would "mean that the State would take custody, and have the ability to make decisions for a period of time about where [child] lives and what services [child] gets." The court advised father that he had the right to a trial at which the state would have to "prove what they're saying in the petition" and that, "if the State were to prove by a preponderance of the evidence the things that they're saying in the petition then this Court would take jurisdiction." The court also emphasized that, at a trial, father could cross examine witnesses, call his own witnesses and speak for himself.

Father, nevertheless, points to several comments during the course of the hearing that, he argues, suggested he did not understand that he was admitting to facts sufficient to establish jurisdiction. First, he emphasizes that, when asked if he wanted to "admit part of the petition," he responded, "I only want to admit to the part that I'm incarcerated." He also emphasizes his insistence that he was not withdrawing his *pro se* "petition" to change "temporary custody" of child to father's mother (grandmother) or father's fiancée. Finally, he points to his emphasis at the end of the hearing that he was not completely incapable of providing care because grandmother and his fiancée remained as custody resources. Those remarks are not necessarily inconsistent, however, with the court's determination that father knowingly and voluntarily admitted that his incarceration posed a danger to child in exchange for DHS withdrawing the allegation that father's "pattern of criminal behavior"

compromised his ability to appropriately parent child. Moreover, father's counsel explained to the court that she understood the *pro se* petition to reflect father's concerns about the withdrawn basis for jurisdiction and viewed his other comments as reflecting his concerns that he retain his parental rights and that he be allowed "family visiting." Under the circumstances, the court did not abuse its discretion in refusing to allow father to withdraw his admission.

Finally, we consider and reject father's contention that the jurisdictional judgment should be reversed because his attorney provided inadequate assistance. In *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 187, 796 P2d 1193 (1990), the Supreme Court held that parents have a right to adequate counsel and that the interest in prompt resolution means that parents may raise on direct appeal from a judgment of termination of parental rights an unpreserved claim of inadequate assistance of counsel. The Supreme Court more recently held that the same considerations apply to a court order that changes a permanency plan away from "return to parent" and, thus, allow parents to raise unpreserved claims of inadequate counsel on direct appeal from an order changing the permanency plan. *Dept. of Human Services v. T. L.*, 358 Or 679, 694, 369 P3d 1159 (2016). The parties disagree about whether *T. L.* suggests that parents should only be allowed to raise such challenges on direct appeal from juvenile court decisions at the permanency stage or later, *i.e.*, not in a direct appeal from the jurisdictional determination. We do not resolve that dispute, however, because we conclude that father has not yet developed an evidentiary record in an attempt to prove his claim of inadequate assistance and that he can do so through a motion in the trial court to set aside the judgment. *See* ORS 419B.923.

As the Supreme Court explained in *T. L.*, "the burden of proof to establish trial counsel's inadequacy in a juvenile dependency proceeding rests with the party seeking relief," and "there likely will be many instances where it will be necessary to develop a more thorough evidentiary record than exists on direct appeal to determine whether the parent is entitled to relief." 358 Or at 702-03 (internal quotation marks omitted). In those cases for which the development

of an evidentiary record is necessary, the party wishing to raise a claim of inadequate assistance of counsel should create an evidentiary record by seeking relief from the judgment under ORS 419B.923, which allows a parent to move to set aside "any order or judgment" made by the juvenile court, including on a claim of inadequate assistance of counsel, and including "during the pendency of a direct appeal from the order or judgment." 358 Or at 695, 703.

In this case, the record on appeal is insufficient to determine that father is entitled to relief on his claim for inadequate assistance of counsel. Accordingly, we affirm without prejudice to the parent's ability to renew the inadequate assistance claim before the juvenile court under ORS 419B.923. 358 Or at 704 (citing *Dept. of Human Services v. H. H.*, 266 Or App 196, 206, 337 P3d 929 (2014), *rev den*, 356 Or 837 (2015)).

Affirmed.