Argued and submitted May 16, affirmed June 28, petition for review denied October 19, 2017 (362 Or 94)

In the Matter of C. I. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. S. H.,
*Appellant.*

Lane County Circuit Court
16JU08184; A163923

398 P3d 1013

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

## LAGESEN, J.

Mother appeals from a juvenile court judgment taking dependency jurisdiction over mother's five-year-old daughter, C. The juvenile court determined that it had jurisdiction over C after mother entered into an agreement with the Department of Human Services (DHS). Under that agreement, mother waived her right to an evidentiary hearing on jurisdiction and admitted to one of the jurisdictional allegations in the petition, as that allegation had been modified in accordance with the parties' agreement.[1] The issue before us is whether the amended jurisdictional allegation to which mother admitted is sufficient to support the juvenile court's exercise of dependency jurisdiction over C. Although mother did not contest the point below, she now contends that her admission, standing alone, is insufficient to support the juvenile court's exercise of jurisdiction. We conclude that mother's admission to the amended jurisdictional allegation, viewed under the standard of review articulated in *Dept. of Human Services v. D. D.*, 238 Or App 134, 241 P3d 1177 (2010), *rev den*, 349 Or 602 (2011), is sufficient to support the juvenile court's exercise of dependency jurisdiction over C. We therefore affirm.

The relevant facts are procedural and not disputed. DHS petitioned the juvenile court to exercise dependency jurisdiction over C. The petition alleged that C is within the court's dependency jurisdiction under ORS 419B.100(1)(c).[2] Specifically, paragraph 4 of the petition alleged:

"The child is within the jurisdiction of the Court by reason of the following facts, to wit: ORS 419B.100(1)(c)

"The circumstances and conditions of [C] are such as to endanger her own welfare, in that:

"A. The mother's mental health condition interferes with her ability to safely parent.

---

[1] Pursuant to the same agreement, DHS dismissed two other jurisdictional allegations.

[2] ORS 419B.100(1)(c) authorizes dependency jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare of the person or others."

"B. The mother's abuse of prescription medication and/or substance abuse interferes with her ability to safely parent.

"C. The mother causes the child harm by subjecting the child to unnecessary, invasive medical procedures."

The juvenile court set the matter for an evidentiary hearing on jurisdiction, but, in advance of that hearing, mother and DHS negotiated an agreement. Under its terms, the parties agreed that paragraph 4A of the petition would be amended to read as follows:

"The mother's physical health, mental health, and disabilities interfere with her ability to parent in the safest way possible and creates risks that are unacceptable to mother. Mother and child will benefit from the services of the court, DHS, and caseworker Traci Noonan."

Mother further agreed to waive her right to an evidentiary hearing on jurisdiction and to admit to the jurisdictional allegation contained in paragraph 4A, as modified. The parties also agreed that DHS would move to dismiss the jurisdictional allegations contained in paragraphs 4B and 4C.

At the hearing, DHS moved to dismiss the jurisdictional allegations in paragraphs 4B and 4C as agreed, and the juvenile court confirmed with mother both that (1) she was admitting to the modified allegation in paragraph 4A of the petition and (2) mother understood that, by doing so, she was giving up her right to an evidentiary hearing and the procedures to which she otherwise would be entitled, including "the right to make the State prove its case against [her] by a preponderance of the evidence." The court then heard from other participants in the case, who elaborated on how mother's mental and physical health issues and disabilities posed a present risk to C. Mother's caseworker explained that it was apparent that mother loved C and wanted to do what was in C's best interest, but that

"it is also clear that mother has some issues around believing her child is ill when the child is not ill. And we just want to assist the mom to help work with one primary care physician with regards to her daughter and to make sure that this daughter is not being given any medications or diagnoses that the child does not need."

C's lawyer concurred in the caseworker's assessment, noting that C was "very loved and doted on," but that "there are existing concerns about the level and type of medical interventions, but I think it will be good to have a caseworker involved that the mother trusts and that can kind of, you know, oversee and manage this." Mother's lawyer noted that the case was "not our typical case of abuse or neglect," but, instead, was "almost a case of overparenting and being overprotective and, you know, the mom having worry and concerns about her daughter's health." Mother's lawyer further explained that mother "really likes her caseworker," was "looking forward to improving as a mother, and she doesn't want to make these mistakes," and saw the situation as "a win/win." Mother thanked the court for working with her, stating that she wanted "to show that I love my daughter and that I just want to do whatever is best for her."

Following mother's admission to the modified allegation and the court's colloquy with the case participants, the court determined that C was within the jurisdiction of the court and made her a ward of the court as required by ORS 419B.328.[3] The court ordered that C be "committed to DHS for care, placement, and supervision, with the placement preference being with the mother." The court further ordered mother to participate in a range of services recommended by DHS, and granted DHS's motion to dismiss jurisdictional allegations 4B and 4C. It then entered a "Judgment of Jurisdiction and Disposition." Consistent with the court's ruling on the record, the judgment reflects that the court determined that C was within its jurisdiction under ORS 419B.100 based on mother's admission to amended allegation 4A.

Mother has appealed. As noted, she assigns error to the juvenile court's determination that C was within its jurisdiction, contending that her admission was insufficient to permit that determination. In response, DHS argues that mother consented to the entry of judgment and that, therefore, ORS 19.245(2) bars this appeal and requires us

---

[3] ORS 419B.328(1) states, "The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court."

to dismiss it.[4] Alternatively, DHS points out that mother did not preserve her assigned error and argues that we should not review it for that reason, asking us to overrule a line of prior cases holding that we must consider issues of juvenile court jurisdiction raised on appeal even if such issues were not preserved in the juvenile court.[5] Finally, DHS argues that mother's admission, when viewed under the standard of review articulated in *D. D.*, is sufficient to support the juvenile court's determination that C is within its jurisdiction.

For the reasons that follow, we conclude that ORS 19.245 does not bar this appeal, and that, under the standard set by *D. D.*, mother's admission was sufficient to support the juvenile court's jurisdictional determination. As a result, we do not reach DHS's contention that our line of cases holding that a party may contest a juvenile court's determination of dependency jurisdiction on appeal, notwithstanding a failure to contest jurisdiction below, is erroneous under *Chandler v. State of Oregon*, 230 Or 452, 370 P2d 626 (1962), and should be overruled. *See Dept. of Human Services v. T. E. B.*, 279 Or App 126, 131 n 2, 377 P3d 682, *rev den*, 360 Or 422 (2016) (declining to address similar

---

[4] ORS 19.245(2) states that "[a] party to a judgment given by confession or for want of an answer may not appeal from the judgment" except in specified circumstances.

[5] In *D. D.*, we concluded that, "although mother never made any objection below, we must consider whether the juvenile court properly found jurisdiction." 238 Or App at 138; *see also State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 371, 774 P2d 484, *rev den*, 308 Or 315 (1989) (in dependency proceeding, "we must consider jurisdictional issues, even when they [we]re not raised by the parties," including issue of whether a child falls within the juvenile court's dependency jurisdiction because the child's circumstances endanger the child). DHS argues that our line of authority is based on a misapprehension of the nature of dependency jurisdiction and conflicts with a Supreme Court case, *Chandler v. State of Oregon*, 230 Or 452, 370 P2d 626 (1962). In that case, which was decided under an earlier iteration of Oregon's dependency statutes, the court rejected the notion that a court's determination of dependency jurisdiction could be challenged at any time, observing:

> "It must be remembered that the word 'jurisdiction' as applied to this proceeding is not the kind of jurisdiction that gives the court the power to act at all. In the sense [that] the word is used in [*former*] ORS 419B.476, which specifies the causes which permit the court to make the child a ward of the court, a finding of jurisdiction is a factual determination that the child is dependent or delinquent. It is not the kind of jurisdictional question that can be raised at any stage of the proceeding."

*Id.* at 455.

argument by DHS upon concluding that allegations to which parent admitted were sufficient to support juvenile court's exercise of jurisdiction).

We start with DHS's argument that ORS 19.245(2) bars this appeal. That statute—which we have acknowledged applies in proceedings under the juvenile code, *State ex rel Juv. Dept. v. Jenkins*, 209 Or App 637, 639, 149 P3d 324 (2006), *rev den*, 342 Or 416 (2007)—generally prohibits a party from appealing a judgment when that party consented to the entry of judgment. ORS 19.245(2) ("[a] party to a judgment given by confession * * * may not appeal from the judgment" except as otherwise specified); *Russell v. Sheahan*, 324 Or 445, 454, 927 P2d 591 (1996) (concluding that ORS 19.245[6] embodies "the fundamental principle that a party may not take an appeal from a judgment to which that party consented"). DHS contends that, by admitting to the modified jurisdictional allegation and waiving her right to an evidentiary hearing on jurisdiction, mother, in effect, consented to the entry of judgment and that, as a result, her appeal is foreclosed by ORS 19.245(2) and must be dismissed.

We disagree. Although mother admitted to the modified jurisdictional allegation, did not actively contest that her admission was sufficient to support a determination that C was within the court's jurisdiction, and acknowledged the possibility that, as a result of her admission, the court "may" place her child outside of her home, mother was never asked whether she consented to entry of the judgment, and there are no other indications that mother consented to the entry of judgment, as distinct from admitting to the allegation on which the juvenile court predicated its jurisdictional determination. Beyond that, it appears that the court entered judgment because it determined on its own that mother's admission demonstrated that jurisdiction was warranted, not because of any expression of consent to entry of judgment by mother. Under those circumstances, we conclude that ORS 19.245(2) does not bar mother's appeal.

---

[6] At the time that the Supreme Court decided *Russell*, ORS 19.245 was numbered ORS 19.020. The legislature renumbered the statute in 1997.

Turning to the merits, the question is whether the amended jurisdictional allegation to which mother admitted is sufficient to support the juvenile court's exercise of jurisdiction. Where, as here, a parent admits to a jurisdictional allegation in a petition and waives the right to have DHS offer evidence in support of the admitted allegation, we liberally construe the allegation and review to determine "whether, pursuant to the allegations, DHS would have been allowed to offer evidence that would establish juvenile court jurisdiction." *D. D.*, 238 Or App at 139. If an admitted allegation is ambiguous and susceptible to multiple interpretations, at least one of which would permit DHS to offer evidence sufficient to establish juvenile court jurisdiction, then a juvenile court does not err by finding a child to be within the court's jurisdiction. *Id.* at 140-41.

*D. D.* illustrates the analysis we employ when a parent admits to a jurisdictional allegation in a dependency petition after waiving the right to an evidentiary hearing on jurisdiction. There, the child's mother waived her right to an evidentiary hearing and "admitted the allegation that [the] 'child has special medical needs. The mother would benefit from the assistance from the Department of Human Services Child Welfare Program.'" *Id.* at 140. We acknowledged that the admitted allegation was ambiguous and susceptible to an interpretation that would not support jurisdiction: that the mother was providing minimally adequate parenting already and would simply become a better parent with DHS assistance. *Id.* However, we concluded that the provision also could be construed in a way that would allow for juvenile court jurisdiction: that the "mother 'would benefit' by gaining the ability to meet [the] child's special medical needs" that she could not otherwise meet without assistance. *Id.* at 140-41. Construed in that way, the allegation would have permitted DHS "to offer evidence sufficient to establish juvenile court jurisdiction." *Id.* at 141. Accordingly, because (1) "the allegation that [the] mother admitted can be construed to contain facts bringing [the] child within the jurisdiction of the court" and (2) the "mother waived her right to have DHS put on evidence supporting the petition," we concluded that the juvenile court did not err by determining that the child was within its jurisdiction based on the mother's admission. *Id.*

Applying that analysis in this case, we conclude that the allegation to which mother admitted is sufficient to support the court's determination that it had jurisdiction over C. To recall, that allegation is as follows:

"The mother's physical health, mental health, and disabilities interfere with her ability to parent in the safest way possible and creates risks that are unacceptable to mother. Mother and child will benefit from the services of the court, DHS, and caseworker Traci Noonan."[7]

As in *D. D.*, the allegation is ambiguous. It could be read to mean that mother is providing minimally adequate parenting notwithstanding the issues that interfere with her parenting, but aspires to be a better parent and could use the assistance to meet those aspirations. However, similarly to the admitted allegation that we confronted in *D. D.*, the allegation at issue here also could be read to mean that mother's health issues and disabilities pose a present risk of harm to C that is reasonably likely to be realized unless mother receives assistance, and that mother "would benefit" from the services offered through the court, DHS, and her caseworker by gaining the ability to reduce or eliminate that risk of harm. So pleaded and proved, the allegation would support the juvenile court's jurisdiction over C under ORS 419B.100(1)(c) because it would show that C's condition or circumstances expose her to a current threat of serious loss or injury that is reasonably likely to be realized absent juvenile court intervention. *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 651-53, 853 P2d 282 (1993); *Dept. of Human Services v. T. L.*, 279 Or App 673, 678, 379 P3d 741 (2016); *Dept. of Human Services v. A. R. S.*, 258 Or App 624, 633-34, 310 P3d 1186 (2013), *rev dismissed*, 355 Or 668 (2014). And, in fact, the discussion on the record about the underlying factual basis for mother's admission—that mother's different

[7] DHS argues that, by admitting to amended allegation 4A, mother necessarily admitted to the prefatory wording contained in paragraph 4, including the allegation that "[t]he circumstances and conditions of [C] are such as to endanger her own welfare," pointing out that, in *T. E. B.*, we concluded that admission to similarly worded allegation was sufficient to support juvenile court jurisdiction. *See T. E. B.*, 279 Or App at 129-31. However, on this record, it is not clear to us that that prefatory wording was within the scope of mother's admission. For that reason, we do not take it into account in assessing whether the allegation to which mother undisputedly admitted was sufficient to support the juvenile court's determination that C is within its jurisdiction.

health issues and disabilities were resulting in C receiving unneeded medical treatment and that mother needed some assistance to avoid making those "mistakes"—indicates to us that the parties to the case understood the allegation in the latter sense and, perhaps more crucially, that DHS was prepared to introduce evidence to prove that C faced a current risk of harm that was reasonably likely to be realized, absent juvenile court intervention, if mother had not waived her right to an evidentiary hearing on jurisdiction.

For those reasons, we are persuaded that the allegation to which mother admitted is one that, had mother not admitted to it and waived her right to an evidentiary hearing, would have permitted DHS to introduce evidence sufficient to establish juvenile court jurisdiction. Therefore, under *D. D.*, the juvenile court did not err in determining that C is within its jurisdiction based on mother's admission to the allegation.

Affirmed.